**David CORBIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0501–CR–25.**

Court of Appeals of Indiana.

Jan. 17, 2006.

---

Michael R. Fisher, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, for Appellee.

**OPINION**

MATHIAS, Judge.

David Corbin ("Corbin") was convicted in Marion Superior Court of Class A felony attempted murder,[1] two counts of Class

---

1. Ind.Code § 35–41–5–1 (2004); Ind.Code § 35–42–1–1 (2004).

B felony attempted aggravated battery,[2] Class B felony escape,[3] and Class D felony resisting law enforcement.[4] The court sentenced Corbin to consecutive sentences of fifty years for his attempted murder conviction, enhanced by thirty years for being an habitual offender,[5] twenty years for each attempted aggravated battery conviction and eight years for his escape conviction, for an aggregate sentence of 128 years. Corbin raises three issues on appeal, which we restate as:

I. Whether the evidence is sufficient to support Corbin's attempted murder and attempted battery convictions;

II. Whether the trial court properly determined that Corbin should be restrained with shackles during trial; and,

III. Whether Corbin's sentence is proper and appropriate.

Concluding that his attempted murder and attempted aggravated battery convictions are supported by sufficient evidence, that the trial court properly determined that Corbin should be restrained during trial, and that Corbin's sentence is proper and appropriate, we affirm.

## Facts and Procedural History

On March 18, 2003, Marion County Deputy Sheriffs were transporting Corbin in a van from the Wabash Valley Correctional Facility, located in Carlisle, Indiana, to the City–County Building in Indianapolis so that he could testify at another defendant's trial. Corbin was seated on a bench in the back of the police van along with three other inmates, each restrained by handcuffs and leg irons.

A few blocks away from the Marion County Jail, the deputies transporting the prisoners noticed the van's dome light flickering and then heard kicking coming from the rear of the van. At the same time, Edward Trainer ("Trainer"), a commercial pilot, and Eric Altamore ("Altamore"), a nightclub manager, were separately in downtown Indianapolis near the intersection of Maryland and Meridian Streets when they each heard the sound of breaking glass. When Trainer and Altamore turned to determine where the sound had originated, they saw a Sheriff's Department van near the intersection. One of the van's windows had fallen to the ground. Soon thereafter, Corbin climbed out of the van and fell to the ground before he stood up and ran into a nearby Hampton Inn. Trainer and Altamore chased Corbin through the Hampton Inn and Corbin exited on the Meridian Street side into the hotel's parking lot.

Also at this time, Indianapolis Police Detective Randall Busic ("Detective Busic") was walking along Meridian Street near the Hampton Inn and he observed Corbin, wearing an orange jumpsuit, run out into the alley and parking lot as he was chased by Altamore and Trainer. Detective Busic, in full uniform, brandished his firearm and ordered all three men to stop and put their hands in the air. After Trainer and Altamore identified themselves, Detective Busic ordered Corbin to turn around and put his hands behind his back so that he could be handcuffed. Detective Busic holstered his firearm before he handcuffed Corbin.

2. Corbin was convicted of two counts of attempted aggravated battery as lesser-included offenses of attempted murder pursuant to section 35–42–1–1.

3. Ind.Code § 35–44–3–5 (2004).

4. Ind.Code § 35–44–3–3(b) (2004).

5. On April 28, 2003, the State charged Corbin with being an habitual offender, pursuant to section 35–50–2–8 of the Indiana Code. *See* Ind.Code § 35–50–2–8 (2004); Appellant's App. pp. 42–43. The court determined that Corbin was an habitual offender. Tr. p. 318.

After Detective Busic had handcuffed Corbin and was in the process of radioing his control operator, Corbin stood upright, hit Detective Busic in the chest with his left elbow, grabbed his firearm and immediately fired a shot which hit the pavement near where Altamore was standing. Trainer and Altamore immediately took cover behind different cars in the hotel parking lot as Detective Busic attempted to regain control of Corbin. Detective Busic managed to secure one hand on the firearm and his other hand on Corbin's arm before Corbin fired several more shots as he threatened, "I'm going to kill you, [expletive deleted]." Tr. p. 55. One of the shots hit the pavement in front of Trainer.

As Detective Busic continued to struggle with Corbin to gain control of the gun, Altamore ran over and tackled Corbin onto a nearby vehicle. Trainer then joined the struggle and forced the release of the gun, which slid down the hood of the vehicle. Several other police officers arrived at the scene and helped to subdue Corbin.

The State charged Corbin with three counts of Class A felony attempted murder.[6] Appellant's App. pp. 28–29. Corbin was also charged with being an habitual offender. Appellant's App. pp. 42–43. The trial court ordered Corbin to be restrained in shackles during the trial. Corbin objected to the order, but the court found that he should be restrained for the safety of those present in the courtroom due to his pre-trial behavior and risk of escape. Tr. pp. 17–19.

After a jury trial, Corbin was convicted of one count of Class A felony attempted murder, two counts of Class B felony attempted aggravated battery as lesser-included offenses of attempted murder,

Class B felony escape and Class D felony resisting law enforcement. Tr. pp. 304–05. Corbin was also found to be an habitual offender. Tr. p. 318. The court sentenced Corbin to fifty years for the attempted murder conviction, enhanced by thirty years for being an habitual offender. The court also imposed twenty-year sentences for each of Corbin's two attempted aggravated battery convictions, as well as an eight-year sentence for his escape conviction. Tr. p. 324. The court merged Corbin's resisting law enforcement conviction into his attempted murder conviction for double jeopardy purposes and did not impose a sentence on the resisting law enforcement count. Tr. pp. 324–25. The court ordered all sentences to be served consecutively for an aggregate term of 128 years. Corbin appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

**I. Sufficiency of the Evidence**

Our standard of review for sufficiency claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses. *Cox v. State,* 774 N.E.2d 1025, 1029 (Ind.Ct.App.2002). We only consider the evidence most favorable to the verdict and the reasonable inferences that can be drawn therefrom. *Id.* Where there is substantial evidence of probative value to support the verdict, it will not be disturbed. *Armour v. State,* 762 N.E.2d 208, 215 (Ind.Ct.App.2002), *trans. denied.* In a criminal case, upon a challenge to the sufficiency of the evidence to support a conviction, a reviewing court respects "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State,* 820 N.E.2d 124, 126 (Ind.2005) (citation omitted).

---

6. Corbin was also charged with and convicted of one count of Class B felony escape and one count of Class D felony resisting law enforcement. He does not challenge those convictions on appeal.

A. *Attempted Murder*

██ Corbin was charged with Class A felony attempted murder by Information that states, in relevant part:

David Corbin, on or about March 18, 2003, did attempt to commit the crime of Murder, which is to intentionally kill another human being, namely: Randall Busic, by engaging in conduct that constituted a substantial step toward the commission of said crime of Murder, that is: with the intent to kill Randall Busic, David Corbin grabbed a handgun from the person of Randall Busic, fired said handgun, stated "I'm going to kill you," and struggled to retain control of said handgun[.]

Appellant's App. p. 28. To convict Corbin of Class A felony attempted murder, the State was required to prove beyond a reasonable doubt that Corbin engaged in conduct that constituted a substantial step toward intentionally killing another human being. *See* Ind.Code §§ 35–41–5–1, 35–42–1–1 (2004).

Corbin contends that there is no showing that he had the specific intent to kill Officer Busic. *See* Br. of Appellant at 8. We disagree.

██ Intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury, in addition to the nature of the attack and circumstances surrounding the crime. *Gall v. State,* 811 N.E.2d 969, 975 (Ind.Ct.App.2004). Intent to kill may be further established by a defendant's use of a deadly weapon against the victim coupled with an announced intention to kill. *Schilling v. State,* 268 Ind. 534, 536, 376 N.E.2d 1142, 1143 (1978). Further, our supreme court held that discharging a weapon in the direction of a victim is substantial evidence from which the jury could infer intent to kill. *Leon v. State,* 525 N.E.2d 331, 332 (Ind.1988).

Here, the evidence clearly establishes that Corbin struck Detective Busic with his elbow, took Detective Busic's firearm and immediately fired a shot. As the two struggled for control of the weapon, Corbin fired several more shots and stated to Detective Busic, "I'm going to kill you, [expletive deleted]." Tr. p. 155. While it is true that, as Corbin correctly points out, none of the shots actually hit Detective Busic, this fact does not demonstrate that Corbin lacked the intent to kill Detective Busic when he specifically threatened to kill him. There is no requirement that a victim be struck by one of the shots in order to trigger the statute. Viewing this evidence in the light most favorable to the verdict, we conclude there was sufficient evidence to support Corbin's Class A felony attempted murder conviction.

B. *Attempted Aggravated Battery*

Corbin was also charged with two additional counts of Class A felony attempted murder by Information that states, in relevant part, as follows:

David Corbin, on or about March 18, 2003, did attempt to commit the crime of Murder, which is to intentionally kill another human being, namely: Eric Altamore, by engaging in conduct that constituted a substantial step toward the commission of said crime of Murder, that is: with the intent to kill Eric Altamore, David Corbin pointed a handgun at and toward the person of Eric Altamore and fired said handgun;

David Corbin, on or about March 18, 2003, did attempt to commit the crime of Murder, which is to intentionally kill another human being, namely: Edward Trainer, Jr., by engaging in conduct that constituted a substantial step toward the commission of said crime of Murder, that is: with the intent to kill Edward

Trainer, Jr., David Corbin pointed a handgun at and toward the person of Edward Trainer, Jr., and fired said handgun[.]

Appellant's App. pp. 28–29. The jury found Corbin guilty of counts II and III of the lesser included offense of Class B attempted aggravated battery. Tr. pp. 304–05. To convict Corbin of Class B attempted aggravated battery, the State was required to prove beyond a reasonable doubt that Corbin engaged in conduct that constituted a substantial step toward knowingly or intentionally inflicting injury on a person that creates a substantial risk of death or causes serious permanent disfigurement, protracted loss or impairment of the function of a bodily member or organ. *See* Ind.Code §§ 35–41–5–1; 35–42–2–1.5 (2004).

■ Corbin contends that there is no evidence to establish that he had the requisite knowledge or intent regarding any attempted aggravated battery toward Altamore or Trainer. Again, we disagree.

The evidence establishes that Corbin fired Detective Busic's handgun multiple times in the presence of others Corbin knew of and who had tried to subdue him, namely Altamore and Trainer. This constituted a substantial step toward the commission of the offense of aggravated battery against Altamore and Trainer. The first shot fired from Detective Busic's handgun hit the pavement right in front of Altamore. Tr. p. 97. Trainer testified that as he ran to hide behind a parked vehicle, Corbin pointed the firearm directly at him and fired another shot, after which Trainer was hit with either asphalt or bullet pieces. Tr. pp. 222–23. Altamore testified that, at the point when all four men were struggling for the firearm, Corbin was twisting his wrist in an attempt to point the barrel of the handgun at their faces. Tr. p. 99. After Detective

Busic wrestled Corbin to the ground, Corbin stated, "I'm serving eighty years, [expletive deleted], I have nothing to lose." Tr. p. 157. We agree with the State that Corbin's statement, along with his firing of the handgun and his attempt to point it at Detective Busic, Altamore and Trainer, demonstrates that he knowingly created a substantial risk of death or serious injury to Altamore and Trainer as charged. We therefore conclude there was sufficient evidence to support Corbin's Class B felony attempted aggravated battery convictions.

## II. Trial Restraints Placed on Corbin

■ During trial, Corbin was restrained with leg shackles and waist shackles that prevented him from raising his hands above the defense table. In addition, he was not allowed to have any writing instrument. Although skirting around counsel table prevented the jury from seeing that he was restrained, Corbin contends that he was deprived of both his presumption of innocence by having to appear before the jury in shackles, and his right to a fair trial because he could not effectively participate and assist counsel.

■ Initially, the State claims that Corbin has waived review of this issue for failing to properly preserve it at trial. *See* Br. of Appellee at 10. A defendant may not argue one ground for objection at trial and then raise new grounds on appeal. *Gill v. State*, 730 N.E.2d 709, 711 (Ind. 2000). Regarding Corbin's trial restraints, defense counsel objected in the following manner:

At this time Mr. Corbin has—he's got leg shackles on and he's got belly shackles on that are keeping both of his hands below the height of the table. There is a white, I guess, paper or plastic skirting around the table such that the jury would not be able to see underneath the table.... However, the problem that I have is, first, the Court has ruled that

this is the way he will remain throughout the pendency of this trial and that he's not to have any writing instruments and things of that sort.... the issues that I have with this is, first of all, his confined conditions have impeded upon his ability to assist in my representing him in this matter.... he's not able to have paperwork in front of him to be able to flip through to read... during the course of the trial. He's also—it is my standard practice that during trials, my—there's a pad placed between myself and my clients and on that pad is where they write anything they wish to communicate to me. I believe that that's a very effective way and anything less than that impedes upon my effective representation.... And then, finally, Judge, by having Mr. Corbin confined in this manner, I believe that it certainly could reflect a poor image of Mr. Corbin with him sitting with his hands in his lap throughout the course of the trial. The jurors could certainly take that to mean he doesn't really care ·much about this case, that he's not taking an active role in his representation and that it's contemptuous to the Court and to the jury and to the whole process ... So, for those reasons, Judge, I object to the confinement[.]

Tr. pp. 16–18.

■ Although we agree with the State that Corbin has forfeited his right to argue this issue on the basis that he was denied a presumption of innocence, as it was never raised at trial, we disagree with the State's contention that this issue is waived entirely. Corbin's counsel expressed concern and, more importantly, objected on the grounds that Corbin's restraints denied him the ability to assist counsel and participate at trial. While Corbin did not specifically object that he would be denied a fair trial as a result of the restraints, his objec-

tion was sufficient to preserve this issue on appeal.

■ A defendant has the right to appear in front of a jury without physical restraints, unless restraints are necessary to prevent the defendant's escape, to protect those present in the courtroom, or to maintain order during the trial. *French v. State*, 778 N.E.2d 816, 820 (Ind.2002) (citing *Evans v. State*, 571 N.E.2d 1231, 1238 (Ind.1991)). The trial judge's reasoning and facts supporting the decision to use restraints must be placed on the record. *Id.* An "order to restrain a defendant is reviewed for an abuse of discretion." *Id.* (quoting *Forte v. State*, 759 N.E.2d 206, 208 (Ind.2001)).

The trial court explained its order to place Corbin in physical restraints, with skirting surrounding the defense table, as follows:

I want to make the record on this ... With respect to his risk status, compared to when he has been brought over to the Court for pretrial conferences with tasers drawn and flack-jacketed people attending to him, the Court finds that the means/measures taken today to deal with Mr. Corbin and that security risk are fairly unobtrusive. He looks respectful [sic] the Court's view, seated at counsel table. The skirting does block any view of the fact that he is restrained, both by shackles and by handcuffs and belly chains. And, I think, probably, the most strong [sic] motivator for the Court was that indicated by counsel with respect to the argument on the Motion in Limine, and that in earlier statements that he doesn't have anything to lose and that concerns the Court in terms of the safety of these proceedings and the people in this courtroom, which the Court is obliged to protect, as well.... The Court has indicated, both to counsel and to Mr. Corbin,

... if he feels the need to speak to his attorney ... hold up a legal pad between you and your counsel as you speak. That happens not infrequently, anyway in the courtroom.... So the Court just doesn't feel that it's worth the safety risk to have any sort of sharp instrument in his hands[.] I'll be happy to take as many recesses as we need[.]

Tr. pp. 18–19. It is clear to us that the trial court took proper and adequate precautions to obscure the jury's view of Corbin's shackles, and the record does not disclose that the jury ever saw any shackles. *See* Br. of Appellant at 13. Furthermore, there is nothing in the record to indicate that Corbin's restraints actually prevented him from communicating with counsel. We conclude that the trial court complied with the requirements of law by stating, on the record, facts and reasoning supporting its determination that restraints were necessary. Based on the reasons given by the trial court, we cannot say that the trial court abused its discretion in having Corbin handcuffed and shackled.

### III. Corbin's Sentence

■ Finally, Corbin contends that his sentence is inappropriate in light of the nature of his offense and character.[7] We disagree.

■ Appellate courts have the constitutional authority to revise a sentence if, after consideration of the trial court's decision, the court concludes the sentence is inappropriate in light of the nature of the offense and character of the offender. Ind. Appellate Rule 7(B) (2005); *Marshall*

*v. State*, 832 N.E.2d 615, 624 (Ind.Ct.App. 2005), *trans. denied.*

■ The "nature of the offense" portion of the standard speaks to the statutory presumptive sentence for the class of crimes to which the offense belongs. *See Williams v. State*, 782 N.E.2d 1039, 1051 (Ind.Ct.App.2003), *trans. denied.* That is, the presumptive sentence is intended to be the starting point for the court's consideration of the appropriate sentence for the particular crime committed. *Id.* The character of the offender portion of the standard refers to the general sentencing considerations and the relevant aggravating and mitigating circumstances. *Id.*

Corbin rests his inappropriate sentence argument on the contention that 128 years is constitutionally disproportionate and fails to comply with Indiana's sentencing process, one which "should be focused more upon rehabilitation than upon retribution." Br. of Appellant at 20 (quoting *Borton v. State*, 759 N.E.2d 641, 648 (Ind. Ct.App.2001)). Since 1989, Corbin has been convicted of sixteen felonies, including: robbery, escape, attempted escape causing bodily injury, burglary, prisoner in possession of a dangerous weapon, carjacking, battery, auto theft and theft. Appellant's App. pp. 155–58. This sixteen-year period of criminal activity, when combined with Corbin's current escape, attempted murder and aggravated battery convictions at issue, clearly demonstrates Corbin's inherent inability to conform his behavior to the law and to the norms of civilized society. Under these facts and circumstances, we cannot conclude that Corbin's sentence is inappropriate.

7. Corbin also relies on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), to argue that the trial court improperly relied on facts that should have been submitted to a jury, specifically his criminal course of behavior. However, as the State correctly points out in its brief, Corbin has waived this argument and we decline to review it. *See* Br. of Appellee at 15.

## Conclusion

The evidence is sufficient to support Corbin's attempted murder and attempted battery convictions; the trial court correctly determined that Corbin should be physically restrained at trial; and the trial court properly sentenced Corbin. We therefore affirm the trial court in all respects.

BAKER, J., and RILEY, J., concur.