**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**CLERK**
of the supreme court,
court of appeals and
tax court

FILED

Jul 30 2012, 9:21 am

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS McMATH**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES L. JOHNSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1112-CR-1100 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Christine R. Klineman, Commissioner
Cause No. 49G05-1108-FA-55534

**July 30, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant James L. Johnson appeals his seventy-five-year sentence that was imposed following his convictions for Criminal Deviate Conduct,[1] a class A felony; Criminal Confinement,[2] a class B felony, and being a Habitual Offender.[3] Specifically, Johnson argues that his sentence of seventy-five years is inappropriate in light of the offenses and his character pursuant to Appellate Rule 7(B). Finding that Johnson's sentence is not inappropriate, we affirm the decision of the trial court.

FACTS

During March 2010, thirty-three-year-old K.R. worked at Labor Ready, a temporary employment agency in Indianapolis. K.R. usually left home between 1:00 and 2:00 a.m. so that she could make the twelve-mile walk to Labor Ready by 5:30 a.m. to be assigned employment for that day.

On March 20, 2011, as K.R. made her usual twelve-mile walk to work, Johnson stopped his truck on the road next to K.R. and asked her if she wanted a ride. The area where Johnson approached K.R. is "remote and destitute. It's a lot of vacant lots, vacant houses, it's pretty rural. But there is not a lot of per say [sic] pedestrian traffic." Tr. p. 42-43. K.R. declined Johnson's offer and continued walking towards Labor Ready.

Johnson then exited his vehicle, pulled out a box cutter-style knife, and held the knife to K.R.'s cheek. K.R. screamed for help, but Johnson put his hand over K.R.'s

---

[1] Ind. Code § 35-42-4-2.

[2] I.C. § 35-42-3-3.

[3] Ind. Code § 35-50-2-8.

2

mouth and told her to "shut up." Tr. p. 57. Johnson then blindfolded K.R., forced her into his truck, and then drove away with K.R.'s head on his lap. K.R. attempted to free herself by threatening Johnson with a canister of bug spray, but Johnson took the spray from K.R. and threatened to kill her.

After driving for an unknown distance, Johnson took the blindfolded K.R. from his truck and carried her upstairs into a building. When Johnson removed K.R.'s blindfold, she was in a room with only a ladder, paint supplies, and an old mattress. K.R. again screamed for help. Johnson covered K.R.'s mouth and placed the knife against her throat, threatening to kill K.R.

K.R. testified that Johnson then forced her to have sexual intercourse. K.R. struggled, so Johnson tied K.R.'s hands behind her back. After the first instance of vaginal intercourse, Johnson forced K.R. to perform oral sex on him. K.R. testified that Johnson then forced her to have vaginal intercourse a second time. K.R. screamed for help multiple times, and she feared that Johnson would suffocate her because he placed his hands over her nose and mouth to silence her screams.

Johnson then led K.R. to the bathroom, untied her hands, and forced K.R. to wash her vaginal area using a water bottle. After K.R. retrieved her pants, Johnson blindfolded K.R. again and forced her back into his truck. Johnson eventually released K.R. in an unfamiliar area. K.R. attempted to call 911, but her hands were shaking so badly that she could not use her cellular phone.

3

Roxie Johnson was driving with her sixteen-year-old daughter when K.R. ran up to Roxie's vehicle. Roxie could not understand K.R. because she was hysterical and screaming for help. K.R. eventually told Roxie that she had been raped; Roxie immediately dialed 911.

At approximately 12:30 p.m., Officer Brian Gabel of the Indianapolis Metropolitan Police Department (IMPD) responded to Roxie's 911 call. When Officer Gabel spoke with K.R., he observed that "her hair seemed to be a mess. As she spoke her voice quivered and her hands were shaking." Tr. p. 44. Officer Gabel also described K.R. as "very distraught looking, very scared," and he "also observed red markings on her wrist." Id. K.R. did not know the identity of the man who attacked her, but she described him as "a black male about 5'11, balding and [had a] mustache." Tr. p. 48. An ambulance transported K.R. to the hospital.

At the hospital, K.R. met with Nurse Kelly Owens. K.R. recounted the details of Johnson's attack to Nurse Owens who then performed a sexual assault examination. As part of the examination, Nurse Owens collected swabs from K.R.'s internal and external vaginal area, anus, and mouth. Before leaving the hospital, K.R. met with IMPD Detective Bruce Smith. K.R. provided Detective Smith with a description of her attacker and the details of the assault.

Sarah Klassen, a forensic scientist with the Marion County Forensic Services Agency, later tested the swabs collected from K.R. for the presence of seminal material and saliva. Klassen identified seminal material on the internal and external vaginal swabs

4

and on the anal swab. A trace amount of seminal material was also found on the oral swab. Klassen then packaged the samples and transported them for DNA analysis.

Detective Smith received the results of the DNA testing on July 28, 2011. On each swab, DNA was found from two individuals, K.R. and Johnson. The DNA from the seminal material found in K.R.'s vagina was Johnson's. Johnson was also the source of the sperm found on the anal swab. The sperm fraction from the oral swab matched Johnson's DNA as well. Detective Smith arrested Johnson pursuant to a warrant on August 5, 2011. Detective Smith collected an additional DNA sample from Johnson and discovered that Johnson owned a Ford Ranger pickup truck.

On August 5, 2011, the State charged Johnson with two counts of rape, one count of criminal deviate conduct, one count of robbery, and two counts of criminal confinement. Appellant's App. p. 20-22. The State filed notice that it was seeking a habitual offender enhancement on October 19, 2011. Id. at 61-62. After two days of trial, a jury found Johnson guilty of criminal deviate conduct and one count of criminal confinement.

The trial court held a sentencing hearing on November 15, 2011. At the hearing, Johnson offered mitigating factors, including his failing health and honorable discharge from the armed forces. The trial court declined to find these factors as mitigating. In the sentencing order, with respect to Johnson's health, the trial court found "that this event occurred 3 months earlier and there was no evidence that his health has since deteriorated such that it should be considered a mitigating factor." Appellant's App. p. 112.

5

The trial court found Johnson's "lengthy" criminal history and the nature of the offense to be aggravating factors. Appellant's App. p. 112-13. Due to the violent sexual nature of Johnson's previous felony convictions, the trial court attached the habitual offender enhancement to Johnson's conviction for criminal deviate conduct. The trial court sentenced Johnson to forty-five years in the Department of Correction on the criminal deviate conduct conviction and enhanced the sentence by thirty years because Johnson was a habitual offender. As for the criminal confinement conviction, the trial court sentenced Johnson to fifteen years in the Department of Correction. The trial court ordered the sentences to be served concurrently, for an aggregate sentence of seventy-five years. Johnson now appeals his sentence.

## DISCUSSION AND DECISION

Johnson requests that this court review and revise his sentence pursuant to Rule 7(B). Rule 7(B) provides that the "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." A defendant bears the burden of persuading the reviewing court that his or her sentence is inappropriate when requesting Rule 7(B) review. Anglemyer v. State, 868 N.E.2d 482, 494 (Ind. 2007).

Our Supreme Court has "long said that sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v State, 895 N.E.2d 1219, 1222 (Ind. 2008). Therefore, a reviewing court

6

should only engage in independent revision of a sentence in order to provide guidance to the trial court. Id. at 1225. When reviewing the appropriateness of a sentence, the reviewing court should "focus on the forest – the aggregate sentence-rather than the trees – consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id.

In order to determine the appropriateness of a sentence, the reviewing court examines the nature of the offense and the character of the offender. Childress, 848 N.E.2d 1073, 1080 (Ind. 2006). The nature of the offense prong "speaks to the statutory presumptive sentence for the class of crimes to which the offense belongs." Corbin v State, 840 N.E.2d 424, 432 (Ind. Ct. App. 2006). "The character of the offender portion of the standard refers to the general sentencing considerations and the relevant aggravating and mitigating circumstances." Id.

Here, regarding the nature of the offenses, Johnson blindfolded K.R., forcing her into his vehicle. Tr. p. 58. Johnson forced K.R. to perform oral sex on him after he tied her hands behind her back. Id. at 67. Johnson verbally threatened to kill K.R. multiple times throughout his assault and physically threatened K.R. by holding a knife to her face and neck. Id. at 56-57, 59, 62. Johnson's sexual assault left K.R. hysterical; her hands shook so violently that she could not dial 911. Id. at 78. The nature of Johnson's offenses does not assist his argument that his sentence is inappropriate.

As for Johnson's character, he has a history of violent sexual crimes dating back to 1966. As a sixteen-year-old, Johnson was adjudicated a delinquent for having a sexual

7

relationship with an eleven-year-old girl. PSI p. 3. In December 1989, Johnson raped a fifteen-year-old girl in a similar manner to the present offense. PSI p. 4. Specifically, Johnson forced the girl into his vehicle while she was walking in an area close to where Johnson abducted K.R. PSI p. 4. Johnson then took the victim to a landfill and raped her. PSI p. 4-5. Johnson was also charged with two other rapes following a similar pattern, but those charges were dismissed pursuant to a plea agreement. PSI p. 5. Finally, Johnson was convicted in 2000 of molesting his young stepdaughter. PSI p. 6-7. "[T]he significance of a defendant's prior criminal history in determining whether to impose a sentence enhancement will vary 'based on the gravity, nature and number of prior offenses as they relate to the current offense." Smith v State, 889 N.E.2d 261, 263 (Ind. 2008). Johnson's egregious history of violent sexual crimes, including forcing sexual intercourse on his young stepdaughter and a fifteen-year-old, is sufficiently related to the present offense to justify an enhanced sentence.

Aside from the convictions used in Johnson's habitual offender enhancement, Johnson has amassed seven misdemeanor convictions. Appellant's App. p. 112. Also, repeated attempts by the criminal justice system to rehabilitate Johnson have failed. Johnson has violated the terms of his probation three times. PSI p. 4, 7. Johnson's history of violent sexual crimes and his failed attempts at rehabilitation demonstrate his poor character and that his sentence is not inappropriate.

Nevertheless, Johnson attempts to rebut his violent criminal history by contending that "there are mitigators present that support imposing the advisory sentences when

8

weighed against his criminal history." Appellant's Br. p. 6. Johnson's statement is a request that this court (1) find mitigating factors that the trial court explicitly rejected and (2) reweigh those factors against Johnson's criminal history. The proper standard of review when a defendant challenges a trial court's finding of mitigating and aggravating circumstances is abuse of discretion. Anglemyer, 868 N.E. 2d at 490. Johnson makes no such argument that the trial court abused its discretion with regard to mitigating factors. Appellant's Br. p. 4-6. Furthermore, under our advisory sentencing system, this court will not reweigh aggravating and mitigating factors on direct appeal. See Anglemyer, 868 N.E.2d at 491 (stating that "[b]ecause the trial court no longer has any obligation to 'weigh' aggravating and mitigating factors against each other when imposing a sentence . . . a trial court can not now be said to have abused its discretion in failing to 'properly weigh' such factors"). Accordingly, Johnson's request that this court reweigh his health issues and military service against his criminal history is misplaced.

Moreover, contrary to Johnson's assertion, trial courts can use the nature of the offense to enhance a defendant's sentence on multiple counts regardless of the habitual offender finding. Appellant's Br. p. 5. In Pedraza v State, 887 N.E.2d 77 (Ind. 2008), our Supreme Court addressed whether three sentencing scenarios constituted impermissible double enhancement. Pedraza, 887 N.E.2d at 80-81. First, the Court confronted whether an aggravator and habitual offender status could be based on the same prior conviction. Id. at 80. Under advisory sentencing, "when a trial court uses the same criminal history as an aggravator and as support for a habitual offender finding, it

9

does not constitute impermissible double enhancement of the offender's sentence." Id. Next, the Court addressed whether a trial court could find an aggravating factor and elevate a criminal charge based on the same prior conviction. Id. Again, the Court held that "this is no longer an inappropriate double enhancement." Id. Finally, it was discussed whether a trial court can use the same prior conviction to enhance separate counts. Id. at 81. Our Supreme Court found that "where enhancements of separate counts are based on the same prior conviction, ordering these sentences to run consecutively does constitute an improper double enhancement." Id. Pedraza, however, fails to support Johnson's argument because Johnson was not sentenced to consecutive terms. In sum, we conclude that Johnson's sentence is not inappropriate in light of the nature of his offenses and character.

The judgment of the trial court is affirmed.

KIRSCH, J., and BROWN, J., concur.

10