## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 05 2017, 5:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Majorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael J. Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 5, 2017

Court of Appeals Case No. 71A05-1608-CR-1883

Appeal from the St. Joseph Superior Court

The Honorable Elizabeth C. Hurley, Judge

Trial Court Cause No. 71D08-1509-F5-188

**Mathias, Judge.**

[1] After a jury trial in St. Joseph Superior Court, Michael J. Smith ("Smith") was convicted of one count of Level 1 felony attempted murder and three counts of

Level 5 felony criminal recklessness. In this appeal, Smith claims the evidence was insufficient to support his conviction for attempted murder and that the trial court abused its discretion by refusing tendered self-defense jury instruction.

We affirm.

## Facts and Procedural Posture

Around 2:30 am on August 1, 2015, three vehicles pulled into the Always Open gas station located at the northwest corner of Lafayette and LaSalle streets ("the Intersection") in South Bend, Indiana. First to pull in was a lime green GMC Suburban driven by Stephen Johnson ("Stephen"). Stephen's brother Justin Sharp ("Sharp") sat in the passenger seat, and a friend Marcus Harris ("Harris") sat behind Justin. Following the Suburban was a tan Chevy Tahoe driven by Bryant Johnson[1] ("Bryant"). Finally, a white Mitsubishi Lancer driven by Herneisha Becton ("Becton") entered the gas station. Ashley Irving ("Irving") sat in the passenger seat of the Lancer, while Michael Smith ("Smith"), Bryant's brother, sat in the back seat.

Stephen exited the Suburban and entered the gas station for about ten minutes while Sharp and Harris stayed inside the vehicle. During this time, the Tahoe and Lancer were parked off to the side in the gas station lot. Bryant called

---

[1] There is no indication in the record that Stephen Johnson and Bryant Johnson are related.

Becton who put the call on speaker. Becton, Irving, and Smith listened as Bryant asked, "was that the guy?" Tr. Vol. II, p. 147. Smith responded, "if that was him, then we need to handle business." *Id.* at 148.

[5] Stephen returned to the Suburban and as he began to drive out of the gas station and head south on Lafayette, he noticed that the Tahoe pulled out at the same time, so he stopped and let the Tahoe exit first. The Tahoe driven by Bryant made a right-hand turn out of the gas station, pulled up to the Intersection, and stopped at the light in the right-hand lane. The Suburban driven by Stephen pulled up next to the Tahoe in the left-hand turn lane. The Lancer driven by Becton pulled up directly behind the Suburban.

[6] At this point, Bryant, the driver of the Tahoe, rolled down his window and fired six shots into the passenger side of the Suburban before speeding off to the right, heading west on LaSalle. Stephen, attempting to flee, turned hard to the left, but due to the sharp turn and the size of the wheel rims on the Suburban, the vehicle momentarily became immobile. He was also leaning out of the vehicle attempting to avoid the gunfire. The Becton-driven Lancer then entered the intersection, and once there, Smith fired five shots at the rear of the Suburban out of the Lancer's driver side, back-passenger window. The second round of gunfire spurred Stephen to fully re-enter the Suburban, correct the wheels, and drive off east on LaSalle. The Becton-driven Lancer followed the Bryant-driven Tahoe to Bryant's sister's home where Smith stated, "I think I killed him." *Id.* at 154.

[7] Stephen, realizing both he and his brother had been shot, quickly turned the Suburban around and returned to the gas station. Sharp, who was sitting in the passenger seat, had been shot multiple times, and he was pronounced dead at the scene. Stephen suffered a bullet wound to his right shoulder and Harris was unhurt.

[8] On September 2, 2015, the State charged Smith in three counts: Count I, Level 5 felony criminal recklessness against Harris; Count II, Level 5 felony criminal recklessness against Stephen; and Count III, Level 5 felony criminal recklessness against Sharp. On May 16, 2016, the State added Count IV, Level 1 felony attempted murder against Stephen. A three-day jury trial commenced on June 14, 2016. Prior to final arguments, Smith requested a jury instruction for self-defense. After consideration, the trial court refused to give the offered instruction.

[9] The jury found Smith guilty on all four counts. On July 19, 2016, the court merged Count II and Count IV and sentenced Smith to 38 years executed in the department of corrections for attempted murder, 5 years executed in the department of corrections for criminal recklessness to run consecutively, and a 5-year suspended sentence to probation following release. Smith now timely appeals.

# Discussion and Decision

[10] Smith presents two issues for our review: whether the evidence was sufficient to support his conviction for attempted murder; and whether the trial court abused its discretion by refusing to give the self-defense instruction to the jury.

### *The Evidence was Sufficient to Support Smith's Conviction*

[11] When reviewing a claim of insufficient evidence to sustain a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Jackson v. State*, 50 N.E.3d 767, 770 (Ind. 2016). It is the jury's role, not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. We will affirm the conviction unless no reasonable fact-finder could have found the elements of the crime proven beyond a reasonable doubt. *Id*.

[12] For attempted murder, the State needed to prove, beyond a reasonable doubt, that Smith engaged in conduct constituting a substantial step toward intentionally killing Stephen. *See* Ind. Code §§ 35-41-5-1, 35-42-1-1. Our courts have consistently "held that *intent* to commit murder may be inferred from the use of a deadly weapon in a manner likely to cause death or serious bodily injury." *Booker v. State*, 741 N.E.2d 748, 755 (Ind. Ct. App. 2000) (emphasis in original) (citing *Chapman v. State*, 719 N.E.2d 1232, 1234 (Ind. 1999)). The use of a deadly weapon on its own may not suffice to satisfy the specific intent requirement, however, "the trier of fact may infer that the defendant acted with conscious objective to kill from the circumstances surrounding the deliberate

use" of the deadly weapon. *Id.* at 756. Discharging a weapon in the direction of a victim is substantial evidence from which a jury could infer a specific intent to kill. *Corbin v. State*, 840 N.E.2d 424, 429 (Ind. Ct. App. 2006) (citing *Leon v. State*, 525 N.E.2d 331, 332 (Ind. 1988)).

[13]   In *Perez v. State*, the defendant fired three to five rounds out of his moving Acura towards a Chevy Malibu. 872 N.E.2d 208, 210 (Ind. Ct. App. 2007), *trans. denied*. After the shots were fired, the defendant discussed the shooting and told others he was sure he had hit the car. *Id.* On appeal, the defendant argued that there was insufficient evidence to show he had intended to kill the driver of the Malibu. *Id.* at 212. In *Perez*, we upheld the attempted murder conviction finding there was substantial evidence for the jury to conclude the defendant's conscious objective was to kill when he fired at the moving vehicle. *Id.* at 213.

[14]   *Perez* is analogous to the situation before us here. Smith contends that the shots he fired at the Suburban were not likely to result in murder because the vehicles were traveling in opposite directions. Appellant's Br. at 8–9. However, the record does not support this argument, nor would this fact be dispositive if it did. While all three vehicles were at the gas station, and just after Stephen exited the Suburban, Bryant made a phone call to Becton in the Lancer asking, "was that the guy?" Tr. Vol. II, p. 147. Smith then responded, "if that was him, then we need to handle business." *Id.* at 148. Driving their respective vehicles out of the gas station, Bryant and Becton pulled up alongside and behind the Suburban at the Intersection. Bryant then fired six shots into the passenger side of the Suburban and Stephen attempted to turn left and flee. Before Stephen

was able to flee, Smith fired five shots from the Lancer towards Stephen and the Suburban while both vehicles were in the intersection.[2] Just after the shooting, once Bryant and Smith reconvened, Smith stated, "I think I killed him." Tr. Vol. II, p. 154.

[15] For these reasons, there was substantial evidence to support Smith's attempted murder conviction.

### *The Trial Court Did Not Abuse its Discretion when it Refused to Give Smith's Tendered Self-Defense Instruction to the Jury*

[16] The trial court has broad discretion in how it instructs a jury and we review its discretion only for abuse. *McCowan v. State*, 27 N.E.3d 760, 763 (Ind. 2015). "To determine whether a jury instruction was properly refused, we consider: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given." *Id.* at 763–64. The second element listed above is most applicable to the case before us which our supreme court has at times rephrased as "whether there was evidence to render the instruction applicable to the issues." *Hoskins v. State*, 737 N.E.2d 383, 385 (Ind. 2000) (citing *Williams v. State*, 481 N.E.2d 1319, 1322 (Ind. 1985)). This description by the court proves helpful for our analysis here.

---

[2] It is immaterial that none of the shots actually struck Stephen. *See Corbin v. State*, 840 N.E.2d 424, 429 (Ind. Ct. App. 2006) (holding there is no requirement that shots fired actually strike the intended victim for the attempted murder statutes to be triggered).

[17]     A defendant in a criminal case is entitled to have the jury instructed on any theory of defense as long as it has some basis in the evidence. *Creager v. State*, 737 N.E.2d 771, 777 (Ind. Ct. App. 2000), *trans. denied*. It does not matter whether the evidence is weak or even inconsistent; however, the evidence at trial must provide some probative value to support providing the instruction. *Id.* Three facts must be proven when a defendant claims self-defense: 1) that he was in a place where had a right to be; 2) that he acted without fault; and 3) that he had reasonable fear or apprehension of death or great bodily harm. *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 2000). Further, self-defense is not appropriate for a defendant who is the initial aggressor except in limited circumstances, which are inapplicable here. *Id.*

[18]     Smith tendered the following instruction to the trial court:

> I.C. 35-41-3-2 defines "self-defense" as follows:
>
> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force.
>
> A person:
>
> (1) is justified in using deadly force; and
>
> (2) does not have a duty to retreat:
>
> if the person reasonably believes that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.
>
> However, a person is not justified in using force if:

(1) the person is committing or escaping after the commission of a crime;

(2) provokes unlawful action by another person, with intent to cause bodily injury to the other person; or

(3) the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action. Use of force disproportionate to necessity exceeds the bounds of justifiable force.

"Deadly force" is force that creates a substantial risk of serious bodily injury.

"Bodily injury" means any impairment of physical condition including physical pain.

"Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes: serious permanent disfigurement, unconsciousness, extreme pain, permanent or protracted loss or impairment of the function of a bodily member or organ, or the loss of a fetus.

The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense. Self-defense may be disproved by the State either by producing additional evidence specifically disproving one of the elements of self-defense or by the evidence taken as a whole.

Appellant's App. Vol. II, pp. 20–21. Smith argued that the instruction was justified because Irving testified that when Stephen exited the Suburban, she was afraid he might shoot.[3]

---

[3] There is conflicting testimony here as Stephen testified he never fully exited the Suburban, Tr. Vol. II, p. 130, and when confronted with conflicting evidence we consider it most favorably to the ruling of the trial court. *Dalton v. State*, 56 N.E.3d 644, 647 (Ind. Ct. App. 2016), *trans. denied*.

[19] After due consideration, the trial court refused to give the tendered instruction and reasoned in part, "I did not believe there was, as required by case law, evidence on the record to support the requirement that the defendant himself would have foreseen some threat or some imminent bodily harm that would have led to then him acting in self-defense." Final Statements Tr., p. 2. We agree.

[20] Even though only a scintilla of evidence is necessary to support providing a self-defense instruction, there is *no* evidence that Smith faced any fear or apprehension of bodily harm at any point. Additionally, Smith acted as an aggressor. Three witnesses testified at trial that there was no contact between the occupants of the Suburban and those in the other two vehicles prior to the first shots being fired. Tr. Vol. II, pp. 120, 141, 161. Also, there is no evidence that any of the occupants of the Suburban were carrying firearms at the time of the shooting. *Id.* at 26, 123-24, 138–39. Smith was never in danger and "[a]bsent evidence of impending danger, a self-defense instruction is not proper." *White v. State*, 726 N.E.2d 831, 834 (Ind. Ct. App. 2000), *trans. denied*. Therefore, we conclude that the trial court did not abuse its discretion when it refused to give the jury Smith's tendered instruction regarding self-defense.

## Conclusion

[21] Considering the evidence favorable to the jury's verdict, we conclude that the State presented sufficient evidence to support Smith's attempted murder

conviction. Further, the trial court did not abuse its discretion when it refused to give the jury Smith's tendered instruction regarding self-defense.

[22]     Affirmed.


Kirsch, J., and Altice, J., concur.