## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 14 2019, 6:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven Matthew Quinones,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 14, 2019

Court of Appeals Case No.
19A-CR-628

Appeal from the Lake Superior Court

The Honorable Salvador Vasquez, Judge

Trial Court Cause No.
45G01-0602-MR-3

**Tavitas, Judge.**

# Case Summary

Steven M. Quinones appeals his conviction and ninety-year sentence for murder, attempted murder, and five counts of criminal recklessness.  We affirm.

# Issues

Quinones raises two issues on appeal, which we restate as follows:

    I.    Whether sufficient evidence supports the specific intent element of Quinones' conviction for attempted murder.

    II.    Whether Quinones' sentence is inappropriate in light of the nature of his offenses and his character.

# Facts

H.J., R.L., and their friends, R.B., M.M., D.D., M.S., and D.K., (collectively, "the group"), either attended Central High School in East Chicago together or began their friendships at the school.  On the morning of February 22, 2006, R.L. and H.J. met at the intersection of 149th and Baring Avenue in East Chicago, Indiana, and they walked to school.

Quinones, who was eighteen years old, lived near the same intersection.  R.L. had known Quinones through a relative for approximately two years.  When H.J. and R.L. passed Quinones' house, Quinones was in his yard.  Quinones insulted H.J., and Quinones and H.J. exchanged words.  Quinones exited his yard and punched H.J., and the two engaged in a physical fight.  R.L. quickly broke up the fight and continued to walk to school with H.J.  Less than ten

minutes later, as H.J. and R.L. walked to school, Quinones and two passengers drove slowly past them in a gray vehicle.

[5] Before H.J. arrived at school, he encountered some friends and decided to skip school. H.J. spent much of the day at a friend's house with others, including M.S. and D.D. At approximately 2:30 p.m., when school was out of session, the group went to M.S.'s house and then to Kosciuszko Park at 151st Street and Baring Avenue in East Chicago.

[6] Meanwhile, R.L. got off his school bus at 150th and Baring Avenue and observed H.J. and the group standing near Kosciuszko Park. As R.L. exited the bus and approached the group, R.L noticed Quinones and the two passengers drive by in the same gray car that Quinones drove that morning. R.L. joined H.J. and the group and walked with them to the park.

[7] The group was on the basketball court when a red vehicle drove the wrong way down Baring Avenue, a one-way street. The car was "just creeping[,]" "driving very slow[ly], no faster than five [miles per hour]," and pulled into an alley ahead. *Id*. at 147, 214. The red car repeatedly drove past the group every five minutes. Quinones was in the back seat of this vehicle.

[8] D.K. told the group that they should "just leave th[e] area because it d[oes]n't feel right, something [wa]s up, somebody [wa]s trying to do something[.]" Tr. Vol. II p. 211. The group agreed and began to leave the park. *Id*. at 215. As the group walked past the alley on Baring Avenue toward 150th Street, they observed the red car stop in the street before it turned into an alley ahead.

[9] When the group walked past the alley, Quinones emerged from the alley behind the group and followed them on foot; he shouted: "What's up?" *Id*. at 148. The group turned around, and Quinones pulled a gun from his sweatshirt, pointed it at the group, and ran toward the group. Quinones fired his gun at the group approximately eleven times. The group scattered in different directions. A bullet struck the back of H.J.'s head, and he died at the scene. R.L. was shot in his left arm, and a bullet grazed R.B.'s wrist.

[10] Officers from the East Chicago Police Department responded to the scene and interviewed the members of the group; each member of the group identified Quinones as the shooter. Quinones was arrested the same day.

[11] On February 23, 2006, the State charged Quinones with murder; six counts of attempted murder, as Class A felonies; and one count of battery, a Class C felony, regarding R.L. Investigators interviewed Quinones on February 23, 2006, and after he executed a *Miranda* waiver, Quinones gave a written statement to investigators in which he admitted that he "pulled the pistol out and shot four times" to scare the group; he characterized the group as aggressive toward him. Conf. Ex. Vol. I p. 38.

[12] Quinones appeared for his initial hearing on February 27, 2006. At a subsequent bond hearing on April 11, 2007, the trial court advised Quinones that he could be tried, convicted, and sentenced in absentia. Appellant's App. Vol. II p. 20. Quinones was ordered released on bond.

[13] The trial court scheduled Quinones' jury trial for May 14, 2007. Quinones failed to appear but was represented by counsel.[1] The trial court found that Quinones "voluntarily made himself unavailable" for his jury trial. Conf. App. Vol. II p. 173. Quinones was tried in absentia by a jury from May 14 through May 17, 2007. Witnesses for the State, including R.L., testified to the foregoing facts. At the close of the evidence, the jury found Quinones guilty of murder; one count of attempted murder; five counts of criminal recklessness, Class D felonies, as lesser-included offenses; and battery, a Class C felony.

[14] At the sentencing hearing on June 20, 2007, Quinones failed to appear, and the trial court again found that Quinones voluntarily made himself unavailable. The trial court sentenced Quinones in absentia. The court found, as a mitigating factor, that Quinones was nineteen years old. The trial court found the following aggravating factors: (1) Quinones' prior conviction for carrying a handgun without a license on school property in 2004 and his expulsion from the day reporting program while he was serving his sentence; (2) the fact that "[p]rior leniency by criminal courts [ ] had no deterrent effect on [Quinones'] future criminal behavior"; (3) Quinones committed "multiple offenses involving separate and distinct victims"; (4) Quinones' "manipulative" character; and (5) Quinones was on bond in a separate cause when he committed the instant offenses. *Id*. at 146; Tr. Vol. IV p. 87.

---

[1] A letter from Quinones to his parents was provided to the trial court, wherein Quinones acknowledged that he willfully evaded his jury trial.

[15]    Quinones was sentenced in absentia as follows: fifty-eight years for the murder of H.J.; thirty-two years for the attempted murder of R.L.; and two years on each of the five criminal recklessness convictions. Quinones' battery conviction merged into the conviction for the attempted murder of R.L. The trial court ordered: (1) Quinones' murder and attempted murder sentences to be served consecutively; and (2) the criminal recklessness sentences to be served concurrently to each other, as well as to the murder and attempted murder sentences, resulting in an aggregate sentence of ninety years.

[16]    On December 7, 2018, law enforcement officials discovered that Quinones was living in Texas. Quinones was extradited to Indiana and, on December 19, 2018, the trial court advised him in open court of the foregoing convictions and sentences, as well as his attendant constitutional rights. On March 4, 2019, the trial court granted Quinones' second petition to file a belated notice of appeal; Quinones filed a notice of appeal on March 18, 2019.

# Analysis

## A. Sufficiency of Evidence

[17]    Quinones argues that the evidence is insufficient to support his attempted murder conviction because the State failed to prove that he had the specific intent to kill R.L. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*). Instead, "we 'consider only that evidence most favorable to

the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[18] To prove that a defendant has committed an attempt crime, the State must typically show that the defendant engaged in conduct that constitutes a substantial step toward the commission of the attempted crime, while acting with the same culpability required for that crime. Ind. Code § 35-41-5-1. Our Supreme Court, however, has emphasized the importance of requiring specific intent to kill before a defendant can be convicted of attempted murder, despite the fact that the culpability requirement for murder includes the lesser standard of knowingly. *Fry v. State*, 885 N.E.2d 742, 750 (Ind. Ct. App. 2008) (internal citation and quotation marks omitted), *trans. denied*. The State was, thus, required to prove that Quinones acted with the specific intent to kill R.L., and while doing so, engaged in a substantial step toward killing R.L. *See id.*

[19] Intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury. *Fry*, 885 N.E.2d at 750.

"[D]ischarging a weapon in the direction of a victim is substantial evidence from which the jury could infer intent to kill." *Corbin v. State*, 840 N.E.2d 424, 429 (Ind. Ct. App. 2006). Also, the doctrine of transferred intent, which applies to the intent necessary for attempted murder, provides that a defendant's intent to kill one person is transferred when, by mistake or inadvertence, the defendant kills a third person; the defendant may, therefore, be found guilty regarding the person who was killed, even though the defendant intended to kill another person. *Blanche v. State*, 690 N.E.2d 709, 712 (Ind. 1998); *Straub v. State*, 567 N.E.2d 87, 90 (Ind. 1991) (holding that the State need not introduce evidence that defendant intended to kill the actual victim, but only that defendant intended to kill someone).

[20] Here, Quinones—who does not deny that he acted with specific intent to kill H.J.—fired his gun indiscriminately, as many as eleven times, at the group of seven young men, including R.L. Not only can we infer Quinones' intent to kill H.J. from his discharge of his weapon in H.J.'s direction, but we also find that, pursuant to the doctrine of transferred intent, Quinones' intent to kill H.J. is transferred to his shooting—and attempted murder—of R.L. Accordingly, the evidence is sufficient to establish, beyond a reasonable doubt, that Quinones acted with specific intent to kill R.L.

## B. *Inappropriateness of Sentence*

[21] Quinones argues that his ninety-year sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that this court may revise a sentence authorized by statute if, after due

consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Wilson v. State,* 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (citing *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied*.

[22] In Indiana, trial courts can tailor an appropriate sentence to the circumstances presented; the trial court's judgment receives "considerable deference." *Sanders v. State,* 71 N.E.3d 839, 844 (Ind. 2017) (quoting *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008)). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might be *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Sanders,* 71 N.E.3d at 844 (citing *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)). When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081.

[23] Here, Quinones was convicted, in pertinent part, of murder and attempted murder.[2] At the time of Quinones' offenses in 2006, the sentencing range for murder was between forty-five and sixty-five years, with an advisory sentence of

---

[2] Quinones' five convictions for criminal recklessness, which the trial court ordered served concurrently, had no effect on his aggregate sentence. As noted above, Quinones' battery conviction merged into his attempted murder conviction.

fifty-five years. I.C. § 35-50-2-3 (2006). Here, the trial court enhanced the advisory sentence by three years and sentenced Quinones to fifty-eight years for the murder. The sentencing range for attempted murder, a Class A felony, was between twenty and fifty years, with an advisory sentence of thirty years. The trial court enhanced the advisory sentence by two years and imposed a sentence of thirty-two years. Thus, although Quinones faced a maximum sentence of 115 years, he received an aggregate sentence of ninety years.

[24] Nothing about the nature of his offenses or Quinones' character suggests that his ninety-year sentence is inappropriate. As to the nature of Quinones' offenses, Quinones followed H.J., R.L., and their friends to a park; intimidated them repeatedly by driving past the park slowly; waited in a nearby alley; and when the group left the park, emerged from an alley and ambushed them from behind with a gun. Quinones shot at the group as many as eleven times, injuring R.L. and R.B. and killing H.J.

[25] Regarding Quinones' character, the following facts—as found by the trial court—provide considerable insight into his character: (1) his reckless disregard for the safety of persons with no connection to his dispute with H.J.; (2) his prior criminal history, consisting of a conviction for carrying a handgun without a license on school property, a Class A misdemeanor, in 2004 and public indecency in 2006; (3) his gang affiliation; (4) he remained undeterred from criminal activity even after he received leniency from other courts; (5) his commission of the instant offenses while he was on bond regarding the public indecency offense; (6) his contempt for the rule of law, including his willful

abscondment to evade prosecution while he was on bond in the instant matter; and (7) he eluded justice for ten years until he was apprehended in Texas. Based on the foregoing, we cannot say that Quinones' enhanced sentence is inappropriate in light of the nature of his offenses and his character.[3]

## Conclusion

[26] Sufficient evidence supports Quinones' conviction for attempted murder; and his sentence is not inappropriate in light of the nature of his offenses and his character. We affirm.

[27] Affirmed.

Brown, J., and Altice, J., concur.

---

[3] We decline Quinones' invitation that we should review his sentence in light of *Miller v. Alabama*, 567 U.S. 460 (2012). *Miller*, which declared that mandatory sentencing schemes that require the imposition of life sentences without the possibility of parole for juvenile homicide offenders violate the Eighth Amendment, is inapplicable here because Quinones was not a juvenile when he committed the underlying crimes.