**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**JERRY D. WHITE**
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JERRY D. WHITE, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1306-PC-238 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-0701-FA-1

**March 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SULLIVAN, Senior Judge**

Jerry D. White appeals the denial of his petition for post-conviction relief. We affirm.

The facts and procedural history of this matter, as set forth in the Memorandum Decision from White's direct appeal, are as follows:

> On the night of January 19, 2007, Kimberly Walker and her sister, Pamela Walker, returned to Kimberly's residence. Kimberly was with her four children, Ja.W., Ju.W., Ky.W., and Ka.W.; and Pamela was with her two children, N.T.[ ] and J.J., and her boyfriend, Lathie Turnage. Unbeknownst to anyone in the group, White, the father of Kimberly's children, was in the house. White used to live in the residence with Kimberly and the children, but Kimberly had asked White to move out in November or December of 2006.
>
> Turnage, Pamela, and N.T. went into the front bedroom to lie down. A few minutes later, White entered the front bedroom, turned on the light, and told the three to come out of the room. After Pamela objected, White pulled out a handgun and repeated his demand. Pamela grabbed N.T. and began to exit the room, and Turnage began to get out of bed. White fired at Turnage, but missed. White then moved closer to Turnage and fired again, this time striking Turnage in the left temple. Turnage fell back into the wall and then slumped to the floor.
>
> Pamela began to run to the front door with N.T., but came back because she realized that White was with J.J. White was still holding a gun and waving it around. White instructed Pamela to sit on a couch, and she complied. Kimberly, Ka.W., and Ky.W. were also on the couch. Ja.W. and Ju.W. were on the floor in front of the couch in their sleeping bags. White collected cell phones. At some point, J.J. attempted to leave out the back door, but White demanded that he not leave the house.
>
> At some point during the night, Turnage made a noise, and the group realized that he was not dead. Throughout the rest of the night and following morning, Pamela asked if she could get help for Turnage. White denied her requests.
>
> Around 10:00 a.m. the following morning, White took Kimberly and their four children to a motel, where they stayed until January 23, when police discovered their location and apprehended White. As soon as White left the residence, Pamela called 911. Emergency responders transported Turnage to the hospital. Turnage survived, but suffered what appears to be permanent blindness.
>
> The State ultimately charged White with attempted murder for shooting Turnage; four counts of Class B felony confinement, two with

2

regard to Kimberly, and one each with regard to Pamela and Turnage; two
counts of Class C felony confinement with regard to J.J. and N.T.; and two
counts of Class D felony confinement with regard to Ju.W. and Ja.W.

On November 26 through 28, 2007, the trial court held a jury trial, at
which the jury found White guilty of all counts.

* * * *

The trial court then sentenced White to consecutive terms of fifty
years for attempted murder, twenty years for one count of Class B felony
confinement, and ten years for one count of Class B felony confinement.
The trial court also sentenced White to concurrent terms of twenty years for
a third count of Class B felony confinement, eight years for each count of
Class C felony confinement, one and one-half years for each count of Class
D felony confinement. The trial court found that the fourth count of Class
B felony confinement merged with another count, and declined to enter
judgment on that count.

White v. State, No. 20A03-0803-CR-115, slip op. at 2-5 (Ind. Ct. App. July 29, 2008),

trans. denied. White appealed, challenging the sufficiency of the evidence and the

appropriateness of his sentence. A panel of this Court affirmed his convictions and

sentence.

Next, White filed a petition for post-conviction relief. The court held a hearing, at

which White was represented by counsel. The court denied White's petition, and this

appeal followed.

White raises eight issues, which we consolidate and restate as:

I.      Whether White received ineffective assistance of trial counsel.

II.     Whether White received ineffective assistance of post-conviction counsel.

Post-conviction proceedings provide a narrow remedy to raise issues that were not

known at the time of the original trial or were unavailable on direct appeal. Garrett v.

State, 992 N.E.2d 710, 718 (Ind. 2013). The petitioner in a post-conviction proceeding

3

bears the burden of establishing grounds for relief by a preponderance of the evidence. Id. When appealing the denial of post-conviction relief, a petitioner stands in the position of one appealing from a negative judgment. Passwater v. State, 989 N.E.2d 766, 770 (Ind. 2013). Thus, to prevail from the denial of such relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id.

## I. TRIAL COUNSEL

To establish ineffective assistance of trial counsel, a petitioner must demonstrate to the post-conviction court that: (1) counsel performed deficiently based on prevailing professional norms, and (2) the deficiency resulted in prejudice to the petitioner. Wilkes v. State, 984 N.E.2d 1236, 1240 (Ind. 2013). A petitioner establishes prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 1241.

Counsel's performance is presumed effective, and a petitioner must offer strong and convincing evidence to overcome this presumption. Kubsch v. State, 934 N.E.2d 1138, 1147 (Ind. 2010). Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. Ward v. State, 969 N.E.2d 46, 64 (Ind. 2012).

White argues that his trial counsel, Matthew Majerek, committed several errors that amounted to ineffective assistance. We address each claim in turn.

4

A. Evidence of Domicile

White asserts that prior to his trial, he gave Majerek an Indiana identification card, copies of utility bills, and an Indiana Department of Child Services investigation report, all of which listed Kimberly's address as his residence. He further claims counsel should have used those documents at trial to prove that he was living with Kimberly on the night in question. He says his residency was relevant because he presented a claim of self-defense at trial, and his defense would have been bolstered if he had established a right to be in the home at the time of the shooting.

Majerek testified that White told him about the utility bills but not the other documents. We are obligated to consider the facts in the light most favorable to the post-conviction court's judgment. See Stephenson v. State, 864 N.E.2d 1022, 1028 (Ind. 2007) ("We will not reweigh the evidence or judge the credibility of the witnesses."). With respect to the utility bills, Majerek did not want to use those at trial because: (1) White "could not provide me proof that he actually paid those;" and (2) having his name on the bill "did not mean that he was living there." PCR Tr. p. 22. In addition, Majerek did not want to use the bills because he was concerned they might open the door to other prejudicial evidence, such as that Kimberly slept in her car the night before the incident "because she was afraid Mr. White was coming into the home." Id. at 64. It appears that counsel made a reasonable strategic choice, and the post-conviction court properly concluded that his performance was not deficient on this point.

5

## B. Failure to Object to Opinion Testimony

At trial, Detective Bill Wargo testified about his post-arrest questioning of White. He noted that White told him several different versions of the events leading up to the shooting. Wargo further testified that he did not believe White's multiple versions of events and told White four times during questioning that he did not believe him. Trial Tr. pp. 476-78.

White argues that Majerek should have objected to Wargo's testimony because it amounted to an inadmissible opinion as to White's truthfulness. Indiana Evidence Rule 704(b) provides, "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

Even if Wargo's statements were not admissible under Rule 704, mere failure to object does not necessarily amount to deficient performance. Majerek testified that he intentionally refrained from objecting as a matter of strategy. Specifically, he thought he could convince the jury that Wargo was "bullying" White into confessing. PCR Tr. p. 26. In addition, Majerek called another police officer, Detective Mohan, to testify. He believed Mohan's testimony would bolster White's claim that Turnage attacked him first, thus discrediting Wargo's testimony. Thus, Majerek considered his options and made a strategic choice not to object. The post-conviction court properly concluded that his performance was not deficient on this point.

6

C. Jury Instruction – Intent to Kill

White argues that Majerek should have objected to the trial court's jury instruction on intent to kill because it incorrectly stated the law. To succeed on a claim that counsel was ineffective for failure to make an objection, the defendant must demonstrate that if such an objection had been made, the trial court would have had no choice but to sustain it. Johnson v. State, 832 N.E.2d 985, 1000 (Ind. Ct. App. 2005), trans. denied.

The trial court's Final Instruction Six stated, "Intent to Kill; you may infer from the deliberate use of a deadly weapon in a manner reasonably calculated to cause death." Direct Appeal Appellant's App. p. 154. White claims this instruction was erroneous because it would have permitted the jury to convict him of attempted murder even if he acted with a lesser culpability than a specific intent to kill, i.e., that he acted knowingly.

Majerek testified that Final Instruction Six was an accurate statement of law, and if he had objected he would not have had "a leg to stand on." PCR Tr. p. 33. Our Supreme Court has noted that intent to kill instructions that "includ[e] such words and phrases as 'in a manner likely,' 'deliberate,' and 'in a manner calculated,' employ[ ] language specifically relating to the actor's state of mind and refer[ ] to evidentiary facts relevant to inferring criminal intent." McDowell v. State, 885 N.E.2d 1260, 1263 (Ind. 2008) (citing Bethel v. State, 730 N.E.2d 1242, 1246 (Ind. 2000); Brown v. State, 691 N.E.2d 438, 444 (Ind. 1998)). The instruction in this case, like the instructions at issue in Bethel and Brown, contains language specifically addressing a mental state of intent ("deliberate," "in a manner reasonably calculated"). We thus conclude that the

instruction is not erroneous, and counsel's failure to object did not amount to deficient performance.[1]

## D. Witness Impeachment

White argues that his counsel should have impeached Turnage and Dr. Joseph Schnittker, a neurosurgeon who treated Turnage, using the probable cause affidavit. The affidavit states that White shot Turnage twice, once in the shoulder and once in the head. However, Turnage testified that he did not think the first shot hit him. Dr. Schnittker testified that he could not remember "anything below the neck being abnormal." Trial Tr. p. 136. White asserts that by failing to impeach those witnesses with the affidavit, Majerek allowed the prosecutor to give the jury a false impression that White shot at Turnage once, missed, and shot at him again, thereby proving intent to kill. Appellant's Br. p. 20.

Discharging a weapon in the direction of a victim is substantial evidence from which the jury could infer intent to kill. Corbin v. State, 840 N.E.2d 424, 429 (Ind. Ct. App. 2006). However, there is no requirement that a victim must be hit by a shot to establish attempted murder. Id. Thus, for purposes of proving intent to kill, the crucial part of Turnage's testimony was that White shot at him twice, not whether White actually struck him twice. We cannot say Majerek's failure to cross-examine Turnage as to whether he was actually shot once or twice amounted to deficient performance.

---

[1] White also argues that his trial counsel should have objected to the trial court's instruction on self-defense because it misstated the law. He did not raise this claim in his Amended Petition for Post-Conviction Relief. PCR Appellant's App. pp. 98-101. The claim is therefore waived on appeal. Johnson, 832 N.E.2d at 996.

In addition, Dr. Schnittker did not say that Turnage was not shot in the shoulder, but rather only that he could not recall any injuries below the neck. It is understandable that Dr. Schnittker focused on Turnage's head wound, which was far more severe and fell within his area of expertise. White has not demonstrated that failing to cross-examine Dr. Schnittker on whether Turnage was shot in the shoulder was deficient performance.

### E. False Testimony

White also argues that Majerek was ineffective for failing to challenge the State's use of false testimony. A petitioner claiming use of false testimony is required to demonstrate that a witness's testimony is in fact false or that the witness knew that it was false at the time. Carter v. State, 738 N.E.2d 665, 673 (Ind. 2000). Confused or mistaken testimony is not perjury. Id.

White points to Turnage and Dr. Schnittker's testimony as proof of perjury, because they did not note Turnage had been shot in the shoulder. However, Turnage never conclusively stated that the first shot missed him. He testified, "I don't think I got hit by it, no." Trial Tr. p. 126. The second shot hit him in the head, rendering him blind, and White deprived him of medical treatment for hours after the shooting. It is not unreasonable to conclude that Turnage might have been confused or mistaken as to injuries other than his head wound. In addition, as noted above, Dr. Schnittker never denied that Turnage was shot in the shoulder. Instead, he did not remember any injuries below the neck. Failure to recall does not amount to perjury. Thus, if Majerek had objected to the witnesses' testimony as false, the court would not have been required to sustain the objection.

9

White claims that Dr. Schnittker and Turnage contradicted each other as to the point where the second shot struck Turnage's head. A mere disagreement between witnesses, without more, does not establish that one of the witnesses was lying or that the State was aware of the untruth. Thus, Majerek did not perform deficiently by failing to argue that the testimony at issue was false.

## II. POST-CONVICTION COUNSEL

Our Supreme Court has held that there is no constitutional right to counsel in post-conviction proceedings under either the federal or the state constitution. Hill v. State, 960 N.E.2d 141, 145 (Ind. 2012). Post-conviction proceedings are civil rather than criminal in nature and need not be conducted under the standards followed in criminal cases. Graves v. State, 823 N.E.2d 1193, 1196 (Ind. 2005). Accordingly, we do not apply the well-known standard for trial and appellate counsel to a claim of ineffective assistance of post-conviction counsel, but rather we apply a "lesser standard" based on due-course-of-law principles. Hill, 960 N.E.2d at 145. The crucial inquiry is whether post-conviction counsel appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court. Id.

White argues that his post-conviction counsel, Mark Bates, rendered ineffective assistance by failing to present the following claims: (1) trial counsel was ineffective for failing to impeach Kimberly with prior inconsistent statements and information about her lawsuit against the hotel at which White had confined her and the children; (2) trial counsel was ineffective for failing to object to the amendment of the charging

10

information five days before trial; and (3) trial counsel was ineffective for failing to move to dismiss either count two or count nine under the continuing crime doctrine.

Bates represented White at the post-conviction evidentiary hearing. He presented testimony from several witnesses and tendered exhibits in support of White's claims. It appears that Bates did not present to the post-conviction court several claims that White preferred. However, choosing to present some claims and not others does not deprive a petitioner of a procedurally fair post-conviction proceeding. See Matheney v. State, 834 N.E.2d 658, 663 (Ind. 2005) (determining that post-conviction counsel did not render ineffective assistance by deciding to present only the claims deemed most likely to prevail). We cannot conclude that Bates rendered ineffective assistance to White at the post-conviction hearing.

For the reasons stated above, we affirm the judgment of the post-conviction court.

Affirmed.

BARNES, J., and CRONE, J., concur.

11