## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 24 2019, 7:20 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Thomas Lowe
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tommy G. Hinds, III, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 24, 2019 <br><br> Court of Appeals Case No. 18A-CR-2795 <br><br> Appeal from the Orange Circuit Court <br><br> The Honorable Steven L. Owen, Judge <br><br> Trial Court Cause No. 59C01-1609-F1-1076 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Tommy Hinds (Hinds), appeals his conviction for attempted murder, a Level 1 felony, Ind. Code §§ 35-41-5-1(a); -42-1-1.

We affirm.

# ISSUES

Hinds presents two issues on appeal, which we restate as the following:

(1) Whether the State presented sufficient evidence beyond a reasonable doubt to support Hinds' conviction; and

(2) Whether Hinds' sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

On September 22, 2016, Billy Craft (Craft) was involved in an altercation with Crystal Ledgerwood (Ledgerwood), Hinds' step-daughter. Hinds' wife called Hinds and informed him of the incident. In the company of his nephew, Perry Clouse (Clouse), Hinds drove his truck from Lafayette, Indiana, to French Lick, Indiana, for the purpose of "kick[ing] [Craft's] ass." (Transcript Vol. III, p. 175). Hinds had an unlicensed handgun in his pickup truck.

Craft was in the living room when he heard the tires of a vehicle squeal in front of his home. Craft walked outside to investigate. There was a pickup truck parked in the middle of the roadway. Craft then saw Hinds and Clouse jump

out of the truck with their shirts off and approach his home while yelling. Craft retreated into his house. When Craft saw Hinds and Clouse return to the truck, Craft went back outside. At that point, Hinds began shooting. A total of five shots were fired, and one of the bullets hit Craft in the chest.

[6] Craft's girlfriend, Emerald McCracken (McCracken) was inside Craft's mobile home taking a shower when the shooting occurred. When McCracken heard the gun shots, she stepped out of the shower and got dressed before hurrying to the door where she saw two men "standing outside the truck" with one "skinny dude leaning over the cab of the truck" on the driver's side, and "a big dude at the front of the truck." (Tr. Vol. III, p. 14). McCracken heard one more shot and ran toward Craft. Craft informed her that he had been shot in the chest. Hinds and Clouse immediately drove off. McCracken applied pressure on Craft's wound and called 911. Emergency trained technicians (EMTs) and the police arrived within minutes. While an EMT was administering aid to Craft, Craft repeatedly stated, "Tommy shot me." (Tr. Vol. III, p. 58). After the shooting, Hinds and Clouse drove back to Lafayette, "they wiped the fingerprints off the gun," and Hinds disposed of his gun by throwing it into "Wildcat Creek." (Tr. Vol. III, p. 96).

[7] On September 26, 2016, the State filed an Information, charging Hinds with attempted murder, a Level 1 felony. The State later added a habitual offender enhancement charge. A jury trial was held on September 11, 2018, through September 13, 2018. At the close of the evidence, the jury found Hinds guilty as charged. Hinds then pleaded guilty to the habitual offender enhancement.

On October 24, 2018, the trial court conducted a sentencing hearing, and sentenced Hinds to forty years for the Level 1 felony attempted murder conviction, and enhanced that sentence by twenty years due to the habitual offender finding. Hinds' aggregate sentence is sixty years.

[8] Hinds now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[9] Hinds claims that there was insufficient evidence to convict him of the Level 1 felony attempted murder. When reviewing a claim of insufficient evidence, it is well-established that our court does not reweigh evidence or assess the credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). Instead, we consider all of the evidence, and any reasonable inferences that may be drawn therefrom, in a light most favorable to the verdict. *Id*. We will uphold the conviction "'if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Id*. (quoting *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004)).

[10] A person who "knowingly or intentionally kills another human being" commits murder, a felony. I.C. § 35-42-1-1(1). Indiana's attempt statute states: "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a

crime is a felony or misdemeanor of the same level or class as the crime attempted. However, an attempt to commit murder is a Level 1 felony." I.C. § 35-41-5-1(a).

[11] In the instant case, the State proceeded against Hinds under two theories— Hinds as the principal and Hinds as an accomplice to the attempted murder of Craft—and the jury was instructed on both theories. Hinds argues that none of these State's theories were supported by sufficient evidence beyond a reasonable doubt.

## A. *Hinds as the Principal*

[12] A conviction for attempted murder requires proof that the defendant had the specific intent to kill. *Spradlin v. State*, 569 N.E.2d 948, 949 (Ind. 1991). It is well-settled that the "[i]ntent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury, in addition to the nature of the attack and circumstances surrounding the crime." *Corbin v. State*, 840 N.E.2d 424, 429 (Ind. Ct. App. 2006). Furthermore, "discharging a weapon in the direction of the victim is substantial evidence from which the jury could infer intent to kill." *Id*.

[13] On the theory that Hinds was directly liable as the principal in the commission of the attempted murder, the State presented evidence that on the day of the shooting, Hinds drove from Lafayette to Craft's house in French Lick to confront Craft, and that shortly after arriving, Hinds fired several shots toward Craft's home, with one of those bullets hitting Craft in the chest. Also, the State

presented evidence that Craft identified Hinds as the shooter both immediately after the incident, and again at Hinds' jury trial. Moreover, the location of the shell casings supported an inference that Hinds fired his gun toward Craft's home and at Craft. Detective Shane Staggs (Detective Staggs) testified that during the course of his investigation, he determined that Hinds' vehicle would have been "facing toward French Lick, so the driver side would have been on the left-hand side of the road, um, and that's where the shell casings were located on the left side of the road." (Tr. Vol. III, p. 101).

[14] We find that the State presented sufficient evidence from which the jury could have reasonably concluded that Hinds intended to kill Craft when he pointed his gun directly at Craft and fired five shots. Therefore, Hinds' claim that the State did not present sufficient evidence beyond a reasonable doubt that he acted as a principal fails. *See Perez v. State*, 872 N.E.2d 208, 213-14 (Ind. Ct. App. 2007) (discharging a weapon in the direction of the victim coupled with related circumstances sufficient to prove intent to kill in an attempted murder case), *trans. denied*.

## B. *Hinds as an Accomplice*

[15] Under Indiana's accomplice liability statute, a person "who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]" I.C. § 35-41-2-4. To convict a defendant for attempted murder under an accomplice liability also requires the State to prove the defendant, "with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused his accomplice to commit the crime of

attempted murder." *Bethel v. State*, 730 N.E.2d 1242, 1246 (Ind. 2000). Thus, when the State seeks to convict a defendant of attempted murder on an accomplice liability theory, it must prove: "(1) that the accomplice, acting with the specific intent to kill, took a substantial step toward the commission of murder, and (2) that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder." *Id.*

[16] At his jury trial, Hinds claimed that it was Clouse who shot Craft. Under the theory of accomplice liability, the State presented evidence that Hinds drove Clouse from Lafayette to French Lick to "kick [Craft's] ass." (Tr. Vol. III, p. 175). Hinds and Clouse were together when the shooting occurred, and there was no evidence that Hinds ever opposed the crime. After the shooting, Hinds and Clouse drove back to Lafayette, they wiped the fingerprints off the gun, and Hinds threw the gun into a creek. Hinds' conduct before, during, and after Craft's attempted murder, in conjunction with the other elements, suggests that Hinds and Clouse were working together and demonstrates sufficient evidence from which the jury could have concluded Hinds acted with the specific intent that Craft be killed. Thus, we hold that the evidence readily supports Hinds guilt as an accomplice to the attempted murder of Craft.

## II. *Inappropriate Sentence*

[17] Hinds also contends that his sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due

consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" permits a broader consideration of the defendant's character. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008); *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). An appellant bears the burden of showing that both prongs of the inquiry favor a revision of his sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case. *Cardwell*, 895 N.E.2d at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id*.

[18] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). For his Level 1 felony attempted murder conviction, Hinds faced a sentence of twenty to forty years, with an advisory term of thirty years. I.C. § 35-50-2-4. In addition, Indiana Code section 35-50-2-8(i)(1) provides that "[t]he court shall sentence a person found to be a habitual offender to an additional fixed term that is between six (6) and twenty (20) years, for a person convicted of murder or a Level 1 through Level 4 felony." The trial court imposed the maximum term of forty years for the attempted murder conviction,

enhanced by twenty years due to the habitual offender finding. Hinds' aggregate sentence is sixty years.

[19] Turning to the nature of his offense, after Hinds was informed that Craft had been involved in an altercation with his stepdaughter, Hinds got into his vehicle with his nephew Clouse and drove for more than two hours to confront Craft. The altercation that ensued did not occur in the heat of the moment. As the trial court noted, "[Hinds] had a lot of time to think about it. [He] had a lot of time to contemplate the action to come up . . . [He] chose violence." (Tr. Vol. IV, p. 26). When Hinds and Clouse arrived at Craft's house, Hinds and Clouse intended to fight Craft, but when that did not happen, Hinds used his gun and fired several shots at Craft. Craft was shot in the chest, and he sustained a collapsed lung. Hinds' sentence is certainly not inappropriate in light of the nature of the offense.

[20] We conduct our review of a defendant's character by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. The presentence investigation report reveals that, at the time of sentencing in the present case, Hinds had accumulated eleven criminal convictions, consisting of misdemeanors and felony convictions. His misdemeanor convictions include operating a vehicle while intoxicated, criminal trespass, battery resulting in bodily injury, resisting law enforcement, possession of marijuana, and operating a vehicle without ever receiving a license. His felony convictions include burglary (multiple), theft (multiple), and resisting law enforcement. Not only

did Hinds commit the current offense while on probation for another offense, he also committed a new offense while he was out on bond for the present offense.

[21] We reiterate that our task on appeal is not to determine whether another sentence might be more appropriate; rather, the inquiry is whether the imposed sentence is inappropriate. *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Hinds has failed to carry his burden of establishing that his aggregate sixty-year sentence is inappropriate in light of the nature of the offense and his character.

## CONCLUSION

[22] Based on the foregoing, we conclude that the State presented sufficient evidence beyond a reasonable doubt to convict Hinds of the Level 1 felony attempted murder offense, and his sixty-year aggregate sentence is not inappropriate in light of the nature of the offense and his character.

[23] Affirmed.

[24] Bailey, J. and Pyle, J. concur